PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

ANNAPOLIS POINTE PHASE I LIMITED DIVIDEND HOUSING ASSOCIATION LLC; ANNAPOLIS POINTE PHASE I LLC; ANNAPOLIS POINTE PHASE II LLC; and ANNAPOLIS POINTE PHASE III LLC,

Plaintiff,

Case No.

vs.

HON.

CITY OF INKSTER, a Michigan Municipal Corporation; BYRON H. NOLEN, individually and in his official capacity as Mayor of the City of Inkster; BUCCILLI GROUP LLC, a Michigan Limited Liability Company; and CAROLYN TAYLOR-WILSON, individually and in her official capacity as an Employee of the City of Inkster and Building Director,

Defendants.

PENTIUK, COUVREUR & KOBILJAK, P.C.
By: Randall A. Pentiuk (P32556)
And: Terry L. Johnson (P70773)
Attorneys for Plaintiff
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
Tel: (734) 281-7100
rpentiuk@pck-law.com
tjohnson@pck-law.com

# COMPLAINT AND DEMAND FOR JURY TRIAL

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

NOW COMES Plaintiffs Annapolis Pointe Phase I Limited Dividend Housing Association LLC, Annapolis Pointe Phase I LLC, Annapolis Pointe Phase II LLC, and Annapolis Pointe Phase III LLC, by and through their counsel, Pentiuk, Couvreur & Kobiljak, P.C., for their Complaint against the City of Inkster, Mayor Byron H. Nolen, Buccilli Group LLC, and Carolyn Taylor-Wilson, state as follows:

**INTRODUCTION**

1. This is a civil rights and breach of contract action brought by Plaintiffs, real estate development entities 100% owned, operated, and controlled by African American female principal Ms. ShaWanna Gajewski, to remedy a systematic pattern of racial discrimination, severe sexual harassment, unconstitutional economic extortion, and retaliatory breach of contract perpetrated by the City of Inkster, its Chief Executive, Mayor Byron H. Nolen, and its contractually outsourced building administration department, Buccilli Group LLC, acting with and through City Employee and Building Director Carolyn Taylor-Wilson.

**PARTIES, JURISDICTION, AND VENUE**

2. Plaintiffs Annapolis Pointe Phase I Limited Dividend Housing Association LLC, Annapolis Pointe Phase I LLC, Annapolis Pointe Phase II LLC, and Annapolis Pointe Phase III LLC are Michigan limited liability companies holding title and development rights to the 72 parcels comprising the Annapolis

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

Pointe Development. All four Plaintiff entities are 100% owned, operated, and controlled by African American female principal Ms. ShaWanna Gajewski, with their principal place of business in Wayne County, Michigan.

3. Defendant City of Inkster is a Michigan municipal corporation located in Wayne County, Michigan.

4. Defendant Byron H. Nolen is the elected Mayor and Chief Executive Officer of the City of Inkster, acting at all times relevant under color of state law and as a final municipal policymaker.

5. Defendant Buccilli Group LLC is a private Michigan limited liability company with its principal place of business in Livonia, Michigan. At all times relevant, Buccilli Group LLC operated under contract as the outsourced administrative arm of the City of Inkster Building Department, exercising municipal regulatory authority under color of state law.

6. Defendant Carolyn Taylor-Wilson is a state-licensed official employed by the City of Inkster who works with and through the Buccilli Group LLC. She is designated as the official Building Director for the City of Inkster and is sued in both her individual capacity and her official capacity as an administrative policymaker for the Building Department.

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

7. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States. Supplemental jurisdiction over state law claims is invoked pursuant to 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A. The Annapolis Pointe Contract and Track Record of Compliance

9. On June 12, 2023, Plaintiff's principal and Defendant City executed a valid, binding 'Offer to Purchase Real Property' (the 'Purchase Agreement') for a 72-parcel residential housing development project commonly known as the Annapolis Pointe Development (See Exhibit A).

10. Section 18.7 of the contract explicitly mandates: 'City of Inkster to grant tax abatement through the duration of the construction period up and until the residential dwelling is constructed and is sold to a homeowner, and not the developer and or builder.'

11. On February 5, 2024, Defendant Mayor Byron H. Nolen officially signed a contract amendment extending the closing window to facilitate project implementation (See Exhibit B).

12. Despite these explicit, mandatory provisions, Defendant City repeatedly breached Section 18.7 by issuing substantial property tax assessments to Plaintiffs

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

during the construction period. This vacant-land tax issue has remained continuously unresolved since 2024.

13. To protect the project, Ms. Gajewski paid a Winter property tax bill of $3,028.31 in February 2026 under protest, while demanding that the City resolve the growing vacant land tax balances.

14. According to certified local tax assessments and Wayne County delinquent records, the City's systematic breach has saddled Plaintiffs' 72 construction parcels with $34,977.80 in total unpaid, un-abated tax balances (See Exhibit C). This balance is split across development sectors, including: Bridgeport Court (19 Parcels) with unpaid tax balances totaling $17,547.74; Yorkville Court (26 Parcels) with unpaid tax balances totaling $8,518.85; and Crystal & Wayland Courts (27 Parcels) with unpaid tax balances totaling $8,911.21.

15. Prior to the retaliatory conduct described herein, Plaintiffs maintained an unblemished, fully vetted track record of project compliance:

a. Plaintiffs successfully prepared, submitted, and received complete City review and formal administrative approvals for eight (8) separate building permit application packages.

b. Five (5) completed single-family homes successfully navigated the City's established administrative tracks to receive final Certificates of Occupancy (CO), three (3) of which have been sold to independent homeowners and two (2) of which remain pending sale.

c. Three (3) additional homes remain actively under construction under open, legally issued building permits.

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

d. Plaintiffs completed the City's comprehensive predevelopment and preplanning reviews in June 2024. No material changes, rezoning, or layout shifts have occurred since that final approval.

16. City Treasurer Darin Carrington and Planning Director Sharde Crutchfield supported resolving this matter in accordance with the Purchase Agreement and worked diligently to develop administrative processes and procedures to utilize the Neighborhood Stabilization Program (NSP) as a viable legal mechanism to correct and eliminate the tax balances.

17. To validate the clear operational viability and financial wisdom of this solution, the City of Inkster's official NSP revenue account, 101-727-673.170 – Sale of Land, explicitly reflects approximately $644,378 in actual revenue for FY 2024–2025, alongside an additional $600,000 in dedicated NSP revenue explicitly budgeted for FY 2025–2026. This data establishes that the NSP regularly generates massive municipal revenue through property acquisition and resale, proving that the Carrington-Crutchfield tax correction program was fully funded, legally grounded, and structurally feasible.

18. However, motivated purely by personal animus and a corrupt extortion scheme, Defendant Mayor Byron H. Nolen deliberately intervened and vetoed the NSP tax resolution process. Mayor Nolen completely refused to permit the tax balances to be corrected by the NSP or any other legal means, leaving the un-abated taxes delinquent to be transferred to the Wayne County Treasurer as a

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

property lien. This intentional intervention inflicted severe economic hardship, actively blocking Plaintiffs' eligibility for development grants, commercial construction financing, and Affordable Housing Program (AHP) funding.

**B. Egregious Sexual Harassment and Sex Discrimination**

19. In addition to economic barriers, Ms. Gajewski was subjected to a continuous pattern of severe, pervasive, and sexually suggestive harassment by Defendant Mayor Nolen, who treated her differently on the basis of her gender.

20. On May 22, 2025, at 4:20 PM, Defendant Mayor Nolen initiated an inappropriate text thread inquiring about a personal building contract layout. Following a polite professional response from Ms. Gajewski, Defendant Mayor Nolen immediately responded via direct text message stating: 'I knew you were fine lol don’t tell your husband' (See Exhibit D). This communication served no municipal purpose and directly compromised professional boundaries.

21. On July 18, 2025, during the official public groundbreaking ceremony for the Annapolis Pointe Development, guest speaker Rhonda Johnson Lee addressed the crowd, noting that although Ms. Gajewski was dressed up for the occasion, she also 'get[s] dirty and do[es] the work,' referencing her hands-on leadership as a woman in the construction industry.

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

22. While seated directly beside the stage with Ms. Gajewski and an attending local community leader, Defendant Mayor Nolen loudly responded to attendees: 'Oh, I didn't know Shawanna got her knees dirty.'

23. This public statement carried an intentional, highly offensive sexual innuendo implying that Ms. Gajewski obtained municipal contract opportunities by performing sexual acts. The statement severely devalued her professional standing, violated her dignity, and was witnessed by numerous community members and officials.

**C. Chronology of Private Residence Extortion, Written Threats, and Targeted Retaliation**

24. Following Plaintiffs' resistance to this hostile and discriminatory environment, Defendant Mayor Nolen sought to leverage his official power for private financial enrichment.

25. On April 17, 2024, Defendant Mayor Nolen sent an email to Ms. Gajewski directly requesting that she build a private residence for him and his wife (See Exhibit E). Ms. Gajewski consistently declined this request to avoid an unethical conflict of interest, instead offering external resources, including a direct introduction to builder Michael Griffin on May 22, 2025, to assist him.

26. Subsequently, City Councilwoman Felicia Rutledge—a close personal friend of Mayor Nolen and his wife—intervened to pressure Ms. Gajewski,

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

explicitly urging her to 'strongly consider' building the Mayor's home and stating that doing so would open Plaintiffs up to 'favors from the City.' Ms. Gajewski again firmly declined this corrupt arrangement.

27. Seeking an alternative route, Mayor Nolen entered into a separate real estate consulting agreement for his private home with Builder Sherman Vinson, a mutual acquaintance and an essential independent subcontractor for Plaintiffs' Annapolis Pointe Development. Mr. Vinson operated via VE Properties & Developments, LLC. This independent agreement ultimately soured, resulting in a financial dispute between Mayor Nolen and Mr. Vinson regarding a $5,000.00 consulting fee.

28. When the private residential dispute failed, Defendant Mayor Nolen weaponized his official regulatory authority to extort a personal financial refund from Mr. Vinson by targeting Plaintiffs' commercial operations.

29. On or about August 8, 2026, Defendant Mayor Nolen officially authorized and approved city infrastructure funding to dispatch a municipal contractor, Olsen Concrete, to perform standard sidewalk installations and repairs for the first three homes constructed within Plaintiffs' development loop.

30. Immediately following this standard approval, a critical administrative meeting to finally resolve the outstanding delinquent tax assessments via the

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

Neighborhood Stabilization Program was coordinated on August 14, 2026, at 3:10 p.m., set to take place on Wednesday, August 19, 2026.

31. Merely four hours after this meeting was coordinated, on August 14, 2026, at 7:28 p.m., Defendant Mayor Nolen utilized his personal email account (bnolen@comcast.net) to issue a direct, unlawful extortion demand regarding VE Properties and his personal dispute, copying Ms. ShaWanna Gajewski, explicitly stating: 'If not received this will affect all of the business you, and your associates have within the city of Inkster' (See Exhibit F).

32. On Monday, August 17, 2026, at 9:12 a.m.—immediately following the weekend after the extortion email was sent—the City executed its explicit threat by sending a notice abruptly cancelling the scheduled tax resolution meeting (See Exhibit G). The City has intentionally ignored all subsequent requests to reschedule the meeting.

33. Demonstrating a continuous, unbroken pattern of coercion and extortion, Defendant Mayor Nolen used his personal email (bnolen@comcast.net) again on Friday, August 21, 2026, at 12:27 p.m. Writing directly to Plaintiffs' subcontractor Sherman Vinson and explicitly copying Ms. Gajewski, Mayor Nolen stated: 'I'm still waiting on my $5,000 refund.' (See Exhibit H). This document cements the fact that the City's active obstruction of the Annapolis Pointe project was tied directly to extortion for private financial gain.

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

**D. Corporate Knowledge, Ratification, and Execution of Retaliation by Buccilli Group and Carolyn Taylor-Wilson**

34. To carry out the extortionate threats issued by Defendant Mayor Nolen, the City utilized its outsourced building department contractors, Defendant Buccilli Group LLC, working with and through City Employee and Building Director Carolyn Taylor-Wilson, to initiate a bad-faith, highly targeted administrative onslaught designed to freeze Plaintiffs' construction operations (See Exhibit I).

35. During the execution of this retaliatory campaign, David Reilly, a Buccilli Group project manager assigned to oversee the Annapolis Pointe project, acquired actual knowledge of the bad-faith code manipulations, arbitrary inspection reversals, and invented administrative hurdles being weaponized against the Plaintiffs. Recognizing that these targeted structural obstructions directly contradicted standard building code guidelines and past practices, Mr. Reilly explicitly escalated these regulatory anomalies up the corporate chain of command, complaining directly to his employer, Defendant Buccilli Group LLC, and its corporate management.

36. Despite receiving direct, internal operational notification from their own on-site project manager that the Building Department was executing bad-faith, highly irregular regulatory actions against an active builder, corporate

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

leadership at Buccilli Group LLC and City Employee Carolyn Taylor-Wilson deliberately failed to intervene, failed to take corrective action, and failed to halt the misconduct. Instead, Buccilli Group LLC and Defendant Carolyn Taylor-Wilson actively permitted, ratified, and authorized their staff to advance the retaliatory campaign in order to protect their lucrative municipal services contract with the City.

37. This ratification was formalized via an August 26, 2026 administrative directive and a subsequent September 1, 2026 enforcement order issued through the department, weaponizing building codes and infrastructure guidelines specifically to execute political and racial retaliation against Plaintiffs through the following bad-faith mandates:

a. Fabrication of an Ultra Vires 'DRT' Mandate: The Building Department forced Plaintiffs to submit to a newly invented Development Review Team' (DRT) approval process overseen by Planning Director Sharde Crutchfield, explicitly citing Inkster Zoning Ordinances §§ 155.504 - 155.507 and §§ 155.604 - 155.605. None of these cited zoning provisions authorize the creation of an independent DRT body or require repetitive zoning reviews for individual homes in a previously cleared master-planned residential layout. This process was fabricated solely as an administrative barrier to stall individual building permits under the false pretext that the City only recognizes 'five approved plans.'

b. Unlawful Expansion of Department of Public Services (DPS) Authority: Defendants have completely upended the clear jurisdictional boundaries established under Inkster Code § 52.06, which limits DPS and Director Jerome Bivins' authority strictly to the public water main up to the private lot line. Defendants have expanded DPS's footprint onto private residential footprints, giving Jerome Bivins veto and sign-off authority over internal residential plumbing, landscaping, and private lot structural elements that are legally the sole domain of Building Official David Reilly.

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

c. Discriminatory Sidewalk Defunding and Forced Financial Shifting: Reversing the explicit mayoral infrastructure approvals granted to Olsen Concrete on or about August 8, 2026, the Building Department abruptly altered its course of dealing. On September 1, 2026, the department issued a directive declining to fund or perform standard sidewalk work moving forward, shifting an immediate, punitive financial burden of approximately $6,000.00 per home onto Plaintiffs across the 69 remaining homes, totaling exactly $414,000.00 in future construction injuries. Crucially, the City of Inkster maintains separate dedicated public funds specifically for sidewalk replacement through Account 202-501-976.000 – Improvements-Sidewalks (Major Street Fund) and Account 203-501-976.000 – Improvements-Sidewalks (Local Street Fund). For FY 2024–2025, the City budgeted a combined $512,000 for sidewalk improvements. For FY 2025–2026, that funding increased substantially to $743,000 ($476,000 in the Major Street Fund and $267,000 in the Local Street Fund). While the City Council officially moved to approve the upcoming Budget during its June 15, 2026 public session, the City has selectively and in bad faith withheld these public infrastructure funds from Plaintiffs' layouts despite previous written approvals.

d. Selective Building Code Manipulations: After the Building Department explicitly approved plastic (PEX) water lines for the first two homes—which were completed, approved, and sold—the department arbitrarily forced an underground Type K copper piping mandate exclusively for subsequent properties at 4339, 4335, and 4355 Bridgeport Court. The department ignored repeated formal written requests for ordinance documentation and later reversed its position in writing, admitting that PEX lines are acceptable. This intentional, bad-faith maneuvering forced exactly $15,000.00 in unnecessary additional construction and labor costs onto Plaintiffs.

e. Frivolous Utility Meter and Backfitting Delays: While conceding that PEX may be used, the Building Department continues to actively stall construction by refusing to provide written architectural or mechanical specifications for water meter locations, fittings, valves, sizes, clearances, or configuration. Conflicting instructions and forced retrofitting by inspectors have already inflicted an extra $1,800.00 in direct out-of-pocket development damages.

f. Severe Landscaping Mandates and Withholding of COs: In direct violation of Inkster Zoning Ordinance §§ 155.073(D) and 155.704, which explicitly establish legal mechanisms for seasonal extensions, escrow bonds, and performance guarantees for incomplete landscaping, Defendants are threatening to withhold final Certificates of Occupancy unless fully established green grass or

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

live sod is laid during Michigan's non-growing winter season. This makes DPS sign-off an absolute prerequisite to occupancy, circumventing standard building codes to completely freeze Plaintiffs' home closings.

g. Targeted Pre-Approval Hurdle Mandates: On September 1, 2026, the department extended its retaliatory campaign by enforcing a discriminatory mandate ordering Plaintiffs' team to compile and deliver a unified 'foreseeable request list' for fee waivers, tap modifications, and structural assistance as a strict precondition before the department will review overall needs or process future building permits. This arbitrary request creates a severe administrative hurdle that does not apply to non-minority builders operating under the standard Inkster ordinances.

38. An ordinance cannot be legally amended through administrative emails or departmental memos. A zoning or municipal amendment under Michigan law requires formal introduction, City Council vote, public notice, and open public hearings. Defendants' dynamic, un-ordained enforcement shifts targeted solely at Plaintiffs constitute a complete abuse of administrative authority.

**E. Direct Evidence of Disparate Treatment and Comparative Permit Shielding**

39. To carry out this discriminatory campaign, the City of Inkster and its Building Department have established a blatant, unconstitutional double standard regarding building inspection and construction management codes.

40. Specifically, within mid-2026, the Inkster Housing Commission (IHC), in direct contractual partnership with the Good Housing Partnership and CPC Mortgage Company, finalized and secured a $42.1 million loan to complete a sweeping, comprehensive structural overhaul and modernization of two major

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

housing properties in the city: Demby Terraces (167 residential units located at 28078 Annapolis Street, Inkster, MI 48141) and Parkside Estates (154 residential units located at 3703/3821 S. Henry Ruff Road, Inkster, MI 48141) (See Exhibit J).

41. The managing principals and co-founders of Good Housing Partnership—Alejandro Lara, Geoff Anderson, Jack Hollihan, and Irwin Ackerman—are exclusively white men. The Demby Terrace/Parkside Estates redevelopment is a large-scale rehabilitation project covering 315 residential units—181 units at Demby Terrace and 134 units at Parkside Estates. The BS&A records reviewed identify only 7 issued permits for the overall redevelopment: 2 building permits, 2 electrical permits, 1 mechanical permit, 1 plumbing permit, and 1 zoning/site permit. Most notably, Demby Terrace's 181 units are consolidated under a single building permit (PB250147), while Parkside Estates' 134 units are consolidated under a single building permit (PB250118). The electrical, mechanical and plumbing records likewise cover multiple units/addresses rather than being issued individually for each residential unit. These records demonstrate that the City completely waived standard individualized code oversight for these operations, entirely shielding them from the aggressive administrative hurdles weaponized against Plaintiffs.

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

42. In sharp contrast, Plaintiffs' 72-unit development loop is being targeted with severe regulatory scrutiny. Each Annapolis Pointe unit requires a minimum of 5 separate City permits, with approximately 9–12 inspections associated with these permits, in addition to the manufacturer's State-approved modular submittal package. For the 72-home development, this projects to a minimum of 360 City permits, approximately 648–864 inspections, and the associated permit and inspection fees, demonstrating a stark, unconstitutional difference in permitting and regulatory oversight weaponized exclusively against Ms. Gajewski's African American female-owned enterprise.

43. Furthermore, alternative white-male-owned business entities receive completely unencumbered building privileges. The commercial marijuana grow facilities operating at 26051 Michigan Avenue, Inkster, MI—owned and operated by white male principals who maintain close personal relationships with Mayor Nolen—have been permitted to construct entire new commercial sites completely outside the municipal permitting process, with zero permits filed and zero building codes enforced.

44. Similarly, a white business owner, Abdallah Hachem (owner of Waste Management), who possesses several commercial properties within the City of Inkster, has never been subjected to a fabricated developer-specific DRT review, has never been forced to absorb independent sidewalk infrastructure costs, and

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

has his permitting data shielded from public scrutiny in a manner wholly different from the restrictive, highly scrutinized treatment forced upon Plaintiffs.

**COUNT I: RACE DISCRIMINATION**
**(42 U.S.C. § 1981 & § 1983)**
**(Against All Defendants)**

45. Plaintiffs reallege all prior paragraphs.

46. Defendants City of Inkster, Mayor Nolen, Buccilli Group LLC, and Carolyn Taylor-Wilson intentionally interfered with, blocked, and selectively enforced the terms of Plaintiffs' housing contract on the basis of race.

47. Defendants selectively applied arbitrary property tax burdens, punitive utility mandates, a fabricated developer-specific DRT clearance review, and sidewalk infrastructure defunding to an African American-owned development while entirely waiving structural permit requirements or code scrutiny for the multi-million dollar Demby Terraces/Parkside Estates projects (owned and managed by white male counterparts Alejandro Lara, Geoff Anderson, Jack Hollihan, and Irwin Ackerman) and commercial grow facilities owned by white male counterparts.

48. Defendant Buccilli Group LLC and Defendant City of Inkster are liable under § 1983 because City Employee and Building Director Carolyn Taylor-Wilson had actual and delegated authority over building department operations and directly authorized, enforced, or deliberately ignored this system of

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

unconstitutional, racially disparate regulatory treatment executed with and through Buccilli Group LLC.

**COUNT II: SEX DISCRIMINATION & HOSTILE ENVIRONMENT**
**(14th Amendment via 42 U.S.C. § 1983)**
**(Against Defendants City of Inkster and Mayor Nolen)**

49. Plaintiffs reallege all prior paragraphs.

50. Defendant Mayor Nolen, acting under color of state law as a chief municipal official, subjected Ms. Gajewski to severe, pervasive gender-based hostility, explicit text messages, and sexual harassment, culminating in the public 'knees dirty' comment.

51. This sexual degradation served no legitimate public purpose, was motivated entirely by gender-based animus, and established a discriminatory municipal environment, creating liability for both Mayor Nolen individually and the City of Inkster under Monell.

**COUNT III: FIRST AMENDMENT RETALIATION & COERCION**
**(42 U.S.C. § 1983)**
**(Against All Defendants)**

52. Plaintiffs reallege all prior paragraphs.

53. Plaintiffs and their principal have a clearly established, constitutionally protected First Amendment right to refuse private financial extortion, reject quid-pro-quo political favors, and object to municipal contractual breaches.

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

54. Defendant Mayor Nolen explicitly threatened to destroy Plaintiffs' and their associates' 'business within the city of Inkster' on August 14, 2026, a threat reinforced by his subsequent August 21, 2026 extortion demand.

55. Defendants Buccilli Group LLC and City Employee Carolyn Taylor-Wilson knowingly combined, conspired, and acted in concert with Mayor Nolen to immediately execute that threat. Working together, Defendants manipulated building inspectors, invented a retaliatory 'Plaintiff-Only' DRT process, defunded concrete infrastructure programs previously assigned to Olsen Concrete, imposed unverified construction mandates, canceled resolution meetings, and withheld certificates to completely halt the project.

**COUNT IV: FOURTEENTH AMENDMENT EQUAL PROTECTION — 'CLASS OF ONE'**
**(42 U.S.C. § 1983)**
**(Against All Defendants)**

56. Plaintiffs reallege all prior paragraphs.

57. Plaintiffs are members of a bounded, identifiable class of developers operating within the corporate limits of the City of Inkster.

58. Defendants have intentionally, maliciously, and in bad faith treated Plaintiffs differently from other similarly situated developers, including the Inkster Housing Commission/Good Housing Partnership managed by white male principals Alejandro Lara, Geoff Anderson, Jack Hollihan, and Irwin Ackerman

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

(Demby Terraces and Parkside Estates development loop) and commercial entities at 26051 Michigan Avenue.

59. There is no rational, lawful, or legitimate municipal basis for requiring an African American female-owned 72-home construction project to pull a projected minimum of 360 individual city permits and submit to up to 864 inspections, while completely exempting a massive 315-unit, $42.1 million structural modernization project managed by white male principals from individual guidelines, allowing them to consolidate the entire complex under only 7 total permits.

60. This intentional, arbitrary disparity in building code enforcement was driven entirely by personal malice, racial animus, and political retaliation, directly violating Plaintiffs' right to Equal Protection under the Fourteenth Amendment.

**COUNT V: BREACH OF CONTRACT**
**(Michigan Common Law)**
**(Against Defendant City of Inkster)**

61. Plaintiffs reallege all prior paragraphs.

62. Defendant City materially breached Section 18.7 of the binding Purchase Agreement by failing to clear the property tax bills, transferring $34,977.80 in vacant land taxes to Wayne County as delinquent, and destroying Plaintiffs' eligibility for essential Affordable Housing Program (AHP) development grants.

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

## COUNT VI: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
## (Michigan Common Law)
## (Against Defendants Mayor Nolen and Buccilli Group LLC)

63. Plaintiffs realleges all prior paragraphs.

64. Defendants Mayor Nolen and Buccilli Group LLC acted completely outside the legitimate scope of standard municipal administration by utilizing bad-faith extortion, targeted text harassment, personal malice, and intentionally manufactured code manipulations through Defendant Carolyn Taylor-Wilson to disrupt, freeze, and destroy the valid business expectations and contractual relations between Plaintiffs and the City of Inkster.

65. These malicious, intentional, and bad-faith interferences completely strip Defendant Nolen and Defendant Buccilli Group LLC of any entitlement to governmental or regulatory immunity under Michigan law.

## PRAYER FOR RELIEF

Plaintiffs request a judgment against all Defendants, jointly and severally, awarding:

A. Compensatory damages exceeding $146,800.00 along with itemized forward-looking sidewalk installation damages of $414,000.00;

B. Punitive damages against Defendant Nolen and Defendant Carolyn Taylor-Wilson individually;

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

C. Reasonable attorneys' fees and expert costs under 42 U.S.C. § 1988;

D. An injunction forcing the City and its Building Department to clear all delinquent taxes, honor the contract tax abatement, dissolve the unauthorized and fabricated DRT review mandate, rescind the copper piping and winter sod mandates, restore sidewalk funding parity, approve outstanding building permits, and process all construction clearances.

I declare under penalty of perjury that the statements are true to the best of my information, knowledge and belief.

Plaintiff,
ANNAPOLIS POINTE PHASE I LIMITED DIVIDEND HOUSING ASSOCIATION LLC;
ANNAPOLIS POINTE PHASE I LLC;
ANNAPOLIS POINTE PHASE II LLC; and
ANNAPOLIS POINTE PHASE III LLC

By: ShaWanna Gajewski
ShaWanna Gajewski
Principal Owner

Dated: September 14, 2026

Respectfully submitted,

PENTIUK, COUVREUR & KOBILJAK, P.C.

By: Randall A. Pentiuk
Randall A. Pentiuk (P32556)
And: Terry L. Johnson (P70773)
Attorney for Plaintiff
2915 Biddle Avenue, Ste. 200
Wyandotte, MI 48192
Tel: (734) 281-7100
rpentiuk@pck-law.com
tjohnson@pck-law.com

Dated: September 14, 2026

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

PENTIUK, COUVREUR & KOBILJAK, P.C.

By: *Randall A. Pentiuk*

Randall A. Pentiuk (P32556)
And: Terry L. Johnson (P70773)
Attorney for Plaintiff
2915 Biddle Avenue, Ste. 200
Wyandotte, MI 48192
Tel: (734) 281-7100
rpentiuk@pck-law.com
tjohnson@pck-law.com

Dated: September 14, 2026