# OFFER TO PURCHASE REAL PROPERTY

**THIS OFFER TO PURCHASE REAL PROPERTY** (the "Offer") is entered into between Western Wayne Urban Community Development , a nonprofit organization, (the "Buyer"), and the City of Inkster, a Michigan municipal corporation (the "Seller"). Buyer agrees to purchase from the Seller the land including any structures and/or improvements (the "Property") located in the City of Inkster, County of Wayne, State of Michigan, commonly known as Annapolis Pointe Development, containing 72 parcels and legally described on the attached Exhibit A, under the following terms and conditions:

1. **Purchase Price**. Buyer shall pay to Seller the sum of Four Hundred Thousand Dollars ($400,000.00 ) at Closing. The Property is subject to all applicable building and use restrictions, liens, encumbrances, charges, title exceptions, and easements, if any, affecting the Property. New Mortgage.

2. **Terms of Payment**. Buyer shall pay the full purchase price to Seller upon execution and delivery of quit claim deeds for each parcel as listed in Exhibit A and performance by Seller of the closing obligations specified herein, contingent upon Buyer's ability to obtain mortgage loan in the amount of $ 400,000.00 (Four Hundred Thousand Dollars 0/00) bearing interest at a rate no greater than 15% per annum. Buyer shall apply for the mortgage loan immediately and accept it promptly if tendered.

3. **Irrevocable Offer**. This Offer shall be irrevocable except as set forth in Section 7 with respect to cancellation during the Inspection Period.

**3.1.** The Seller, by executing the acceptance portion hereof and distributing the agreement to Buyer per Section 15. Notices, of this Offer, shall cause this Offer, without further action of either party, to become a binding contract for the sale of Property.

4. **Approvals**. Notwithstanding any other provision of this Offer, Buyer acknowledges that sale of the Property has been approved by City of Inkster City Council by resolution.

5. **Earnest Money**. Upon execution of this Offer, the Buyer shall deliver an earnest money deposit in the form of a certified check or electronic funds in the amount of Zero Dollars 00/100, ($0.00) which shall be referred to as the "Earnest Money". The Earnest Money shall be credited to the Purchase Price at Closing. Buyer shall not be entitled to any interest earned on the Earnest Money. Buyer shall deposit Earnest Money with N/A within 5 calendar days after acceptance of this offer, evidencing Buyer's good faith to apply on the purchase price or the down payment portion thereof where applicable. If this offer is not accepted or the title is not marketable or if the purchase is contingent upon conditions specified which cannot be met, this deposit shall be promptly refunded, and all parties shall be deemed to have agreed to the disposition of the earnest money deposit.

**5.1** Upon acceptance of this Offer, Buyer acknowledges that the Earnest Money deposit shall only be refundable under the conditions set forth in Section 7 and that the full amount of the Earnest Money is non-refundable as liquidated damages in the event of default or failure by

Initials JH Buyer Initials PW Seller

Buyer to perform any of its obligations under the terms of this Offer. In the event that the City of Inkster does not execute this transaction, the Earnest Money shall be returned in its entirety to the Buyer immediately.

**6.** **Closing**. The Closing shall occur at an agreed upon date and time by both the Seller and Buyer, not more than thirty (30) calendar days after the end of the Inspection Period. In the event of unforeseen delays, the Buyer and Seller, in good faith, shall negotiate an extension of this agreement in an effort to close the transaction.

**6.1** Closing shall be contingent upon receiving approval from the City of Inkster and all required parties.

**6.2** The Quit Claim deeds will be provided by the Seller for each buildable parcel. See Exhibit A for the list of parcels to be included in the sale. Additional closing documents will be prepared by the Buyer as needed. Closing costs and special assessments, if any, will be paid by Seller.

**6.3** Closing of this sale is to take place at City of Inkster City Hall, closing on the aforesaid property shall take place at the City of Inkster office located at 26215 Trowbridge, Inkster, MI 48141. At the earliest date and time agreed upon. Purchaser shall remit the balance of purchase price by CERTIFIED CHECK OR MONEY ORDER OR ELECTRONIC FUND TRANSFER at the time of closing.

**6.4** Seller shall convey title to the Property by quit claim deeds, prepared and approved, subject to any liens, charges, actions, encumbrances, restrictive covenant and title exceptions, and subject to the provisions of Public Act 363 of 2008.

**6.5** The execution and delivery of the quit clam deeds by the Seller shall be deemed to be in full performance and discharge of all the terms and conditions of this Offer to be observed or performed by Seller, except those that are stated expressly to survive the Closing.

**7.** **Inspection Period**.

**7.1** Buyer acknowledges that it has had the opportunity for physical inspection of the Property prior to entering into this Agreement, and shall accept the Property "AS IS, WHERE IS, WITH ALL FAULTS" that is, in its present condition. It shall be the sole responsibility of the Buyer to make its own investigations, studies, tests, reports, and other due diligence inquiries as to the Property as deemed appropriate to Buyer prior to entering into this Agreement.

**7.2** Seller authorizes Buyer to enter the Property, with prior notification to Seller, to conduct investigations and studies, and Buyer hereby releases Seller of any and all liability associated with entry and inspection, and warrants that it will comply with applicable regulations regarding environmental and other matters. The Buyer shall have until 5:00 p.m., sixty calendar days (60) days from the date of acceptance of this Offer, to conduct investigations and other due diligence inquiries regarding the Property (the "Inspection Period").

**7.3** After its inspection, if the Buyer is not reasonably satisfied with the results of its

Initials JH b19f464 Buyer Initials PW 469d545 Seller

investigations and due diligence inquiries, the Buyer may cancel this Offer to Purchase Real Property, at Buyer's sole discretion. If Buyer cancels, it shall provide the Seller with copies of any and all its due diligence materials acquired during the Inspection Periods, including but not limited to, environmental reports, surveys, title commitments, and other due diligence materials, and be entitled to a return of the original Earnest Money.

**8.** **Environmental**. Buyer agrees that the Seller assumes no liability or responsibility for the presence of any toxic, hazardous, polluting or injurious substances on, in, or below the Property. Except as expressly stated herein, Seller makes no representations as to any toxic, hazardous, polluting or injurious substances on, in, or below the Property or any property adjacent to the Property.

**8.1** Buyer agrees to accept the Property "as is." Buyer further acknowledges and understands that any building materials and structures on the Property may contain asbestos and mold and that any reuse or redevelopment of the Property that results in demolition or structural changes may result in the release of asbestos or asbestos-containing materials and mold. Buyer agrees to release and hold harmless the Seller from any and all existing and future claims related to the existence or discovery of asbestos, asbestos-containing materials, lead paint, lead plumbing, PCBs and irradiating materials present within building materials and structures located on or below the surface of the Property.

**8.2** Buyer further agrees to take no administrative, judicial or other legal action against the Seller because of the existence or discovery of any toxic, hazardous, polluting or injurious substances. Actions include, but are not limited to, any action for contribution, cost recovery, third party action, injunctive relief to compel the Seller to investigate or take remedial action, declaratory relief, damages, or any action associated with any obligations the Buyer may have to comply with federal, state or local law in conjunction with the investigation, removal, or abatement of any toxic, hazardous, polluting or injurious substance, including but not limited to asbestos or asbestos-containing materials. Buyer agrees to release and hold harmless the Seller from any and all existing and future claims related to the existence or discovery of any toxic, hazardous, polluting or injurious materials in, on, below or emanating from the Property.

**8.3** Buyer agrees to indemnify the Seller and to hold the Seller harmless if any hazardous, polluting, injurious, or toxic substances exist, are discovered in, on, below, or emanating from the Property or their condition is exacerbated by the Buyer.

**8.4** Notwithstanding anything to the contrary in this Section or in this Offer, the Seller will not be responsible to the Buyer for asbestos, lead, or mold-related claims arising from exposure to asbestos, lead, or mold (if any) where the exposure occurs after the date of Closing, and the Buyer will not be responsible to the Seller for asbestos, lead, or mold-related claims arising from exposure to asbestos, lead, or mold (if any) where the exposure occurred prior to the date of Closing.

**8.5** Except as expressly stated herein, Seller makes no representation or warranty as to the truth, accuracy or completeness of any materials, data or information delivered or made available by Seller to Buyer in connection with the sale of the Property. Buyer acknowledges and agrees that all materials, data and information delivered or made available by Seller to

Initials JH 6db099e Buyer Initials PW 1a3b6fc Seller

Buyer are provided as a convenience only and that any reliance on or use of such materials, data or information by Buyer shall be at the sole risk of Buyer.

**8.6** Without limiting the foregoing provisions, Buyer acknowledges and agrees that any environmental or other report regarding the Property which is delivered or made available by Seller to Buyer shall be for general informational purposes only, (b) Buyer shall not have any right to rely on such report delivered or made available by Seller to Buyer, but rather will rely on its own inspections and investigations of the Property and any reports commissioned by Buyer with respect thereto, (c) neither Seller nor the person or entity which prepared any such report delivered or made available by Seller to Buyer shall have any liability to Buyer for any inaccuracy in or omission from any such report, and (d) Buyer shall assume all liability and costs associated with federal, state and/or local environmental laws or regulations.

**9. Property Survey.** The survey, if any, shall be the survey of record and shall govern the Closing. Buyer may, at Buyer's expense, obtain an independent survey of the Property.

**10. Title Insurance.** Buyer shall be responsible for the costs of issuance of a title insurance policy, to be obtained at their own discretion. At Buyer's expense, Buyer shall obtain a standard ALTA owner's policy of title insurance in the amount of the purchase price, effective as of the date of closing. A commitment to issue such policy insuring marketable title vested in Buyer, including a tax status report, shall be ordered within seven (7) calendar days after the Effective Date of this Agreement, and shall be delivered as soon as feasible thereafter. If any matter disclosed by the title commitment adversely and materially affects the value of the Property or Buyer's intended use of the Property, Buyer shall have the right to terminate this Agreement by giving Seller written notice within sixty (_60____) calendar days after copies of both the title commitment and survey referenced above are delivered to Buyer, otherwise Buyer's right to terminate this Agreement pursuant to this shall be deemed to have been waived. A matter disclosed on the title commitment that is in the form of a lien that is liquidated in amount and that can be readily discharged (such as a mortgage or lien) shall not be grounds for termination of this Agreement by Buyer under this Section so long as Seller discharges such lien(s) at the closing.

**10.1** In the event that the Buyer incurs any cost or charges associated with the issuance of title insurance, title commitment, or any services required to obtain the marketable title insurance relative to this transaction, the Seller agrees to reimburse the Buyer at closing for all expenditures provided that such services were approved in advance.

**11. Title Objection.** If objection to title is made, based upon written notice that title is not in the marketable condition required for performance hereunder, Seller shall have 30 calendar days from date notified in writing of particular defects claimed, to either: (a) remedy title; or (b) obtain title insurance satisfactory to Buyer. Buyer agrees to complete sale within 10 calendar days of written notification that the title has been remedied or by date specified in this Agreement if later. If Seller is unable or unwilling to remedy title within time specified, Buyer will waive requirement in writing within 10 calendar days of written notification thereof, or Agreement may be declared null and void at Buyer's option.

**12. Conveyance**. Upon performance by Buyer of the closing obligations specified herein, Seller shall convey marketable title to the Property to Buyer by quit claim deeds as required by

Initials JH 7bbb776 Buyer Initials PW 8454992 Seller

Section 6 above, including oil, gas, and other mineral rights, subject only to building and use restrictions, easements, and restrictions of record, if any. As used herein, "marketable title" means marketable title within the meaning of the Michigan 40-Year Marketable Title Act (Mich. Comp. Laws §§ 565.101 et seq.).

**13.** **Zoning, Safety and Regulatory Compliance.** When title passes to the Buyer at Closing, the Property will immediately become subject to certain safety and regulatory laws and to certain local ordinances and regulations (including zoning and use requirements) to which the Property was not previously subject to because it was owned by the City. Buyer acknowledges that in certain substantial respects the Property may not comply with such statutes, rules, ordinances and regulations and may have to be substantially altered or repaired to become compliant. Buyer acknowledges that it shall comply with all zoning and use requirements. The Buyer acknowledges that the Seller is under no obligation to take any action to bring the Property into compliance with such statutes, and that the Buyer has had the opportunity to make a personal inspection of the Property. The Seller acknowledges that it is their responsibility to disclose any zoning, safety, or regulatory laws with all city and local regulatory agencies, which have and will continue to have, to the Buyer.

**14.** **Fees and Commissions.** Seller agrees to credit to the Buyer 2% of the Purchase price at the closing to reimburse the Buyer for the cost of any person who shall assert a claim to a fee, commission or other compensation in relation to this transaction, as a broker, finder, or other capacity or for performance of services as a broker or finder in connection with this Offer in lieu of providing a real estate broker or agent for this transaction.

**15.** **Notices.** Notices under this Offer shall be delivered to:

| SELLER: | BUYER: |
|---|---|
| City of Inkster<br>Attn: Mayor Patrick Wimberly<br>26215 Trowbridge Road<br>Inkster, MI 48141 | Western Wayne Urban Community Development<br>Attn: John Hearn Jr.<br>27038 Hopkins<br>Inkster, MI 48141<br>Phone: 313-460-6700 |
| WITH COPY TO: | WITH COPY TO: |

As an Alternative to physical delivery, the parties agree that this Agreement, any amendment, or modification of this agreement and/or any written notice of communication in connection with the agreement may be delivered to the Buyer and

Initials JH 581256a Buyer Initials PW 027a05 Seller

Seller in care of the Broker or designated representative via electronic mail or by facsimile via the contact information set forth above. Any such communication shall be deemed delivered at the time it is sent or transmitted. Both Buyer and Seller represent and warrant that an electronic email address has been provided to the Broker or designated representative from which either party may receive electronic mail. The parties agree that the electronic signatures and initials shall be deemed to be valid and binding upon the parties as if the original signatures or initials were present in the documents in the handwriting of each party. Seller to record at the Wayne County Register of Deeds at the Seller's expense.

**16.** **<u>Buyer Representations and Warranties</u>**. Buyer represents and warrants to Seller:

**16.1** Buyer has the full right, power and authority to purchase the Property as provided in this Offer and to carry out Buyer's obligations hereunder, and all requisite action necessary to authorize Buyer to enter into this Offer and to carry out its obligations hereunder have been, or by the Closing will have been, taken. The person signing this Offer on behalf of Buyer is authorized to do so.

**16.2** There is no action, suit, arbitration, unsatisfied order or judgment, government investigation or proceeding pending against Buyer which, if adversely determined, could interfere with the consummation of the transaction contemplated by this Offer.

**16.3** The representation and warranties of Buyer shall survive Closing.

**17.** **<u>Public Policy Provisions</u>.**

**17.1** **<u>Nondiscrimination.</u>** Pursuant to MCL 37.2209 and MCL 37.1209, Buyer shall comply with the Elliott-Larsen Civil Rights Act, 1976 PA 453, MCL 37.2101 *et seq.*; the Persons with Disabilities Civil Rights Act, 1976 PA 220, MCL 37.1101 *et seq.*; and all other federal, state and local fair employment practices and equal opportunity laws and covenants that it shall not discriminate against any employee or applicant for employment, to be employed in the performance of this Offer, with respect to his or her hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment, because of his or her race, religion, color, national origin, age, sex, height, weight, marital status, or physical or mental disability that is unrelated to the individual's ability to perform the duties of a particular job or position. Buyer agrees to include in every subcontract entered into for the performance of this Offer this covenant not to discriminate in employment. A breach of this covenant will constitute a material breach of contract arising out of this Offer.

**17.2** **<u>Termination</u>**. If the Buyer fails to perform any of its obligations under this Offer, the Seller will provide written notice of default to the Buyer. If the Buyer fails to cure within thirty (30) days after the Seller's written notice, Seller may terminate this Offer and any monies paid hereunder may be retained by the Seller as liquidated damages.

**18** **<u>Miscellaneous Provisions</u>**.

Initials JH be5d1a5 Buyer Initials PW e7388ed Seller

**18.1** It is expressly understood and agreed that neither the Seller nor the Buyer shall assign its interest under this Offer or any portion thereof without the prior written consent of the other party, its successors or assigns.

**18.2** Prior to Closing, any news releases or other media releases to the public of information with respect to the sale of the Property or any matters set forth in this Offer will be made only in the form approved by Seller and Buyer in writing.

**18.3** Each provision of this Offer shall be deemed to be severable from all other provisions of the Offer and, if one or more of the provisions of the Offer shall be declared invalid, the remaining provisions of this Offer shall remain in full force and effect.

**18.4** This Offer may be changed or modified only if in writing. This Offer cannot be changed orally, and no Offer shall be effective to waive, change, modify or discharge it in whole or in part unless such Offer is in writing and is signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

**18.5** Each party will, without further consideration, execute and deliver such other documents and take such other action, whether prior or subsequent to Closing, as may be reasonably requested by the other party to consummate more effectively this Offer. Without limiting the generality of the foregoing, Buyer shall, if requested by Seller, execute acknowledgments of receipt with respect to any materials delivered by Seller to Buyer with respect to the Property. The provisions of this Section shall survive Closing.

**18.6** The provisions of this Offer and of the documents to be executed and delivered at Closing are and will be for the benefit of Seller and Buyer only and are not for the benefit of any third party. Accordingly, no third party shall have the right to enforce the provisions of this Offer or of the documents to be executed and delivered at Closing.

**18.7** City of Inkster to grant tax abatement through the duration of the construction period up and until the residential dwelling is constructed and is sold to a homeowner, and not the developer and or builder. At that point in time, the property taxes will be assessed in accordance with local laws for the buyer.

**18.8** This Offer may be executed in any number of counterparts, each of which shall be deemed an original, and all of which when taken together, shall constitute the same instrument.

**18.9** Captions and headings used in this Offer are for information and organizational purposes. Captions and headings, including inaccurate references, do not, in any way, define or limit the requirements or terms and conditions of this Offer.

**18.10** Except as expressly stated herein, Seller makes no representation or warranty as to the truth, accuracy or completeness of any materials, data or information delivered or made available by Seller to Buyer in connection with the transaction contemplated hereby. Buyer acknowledges and agrees that all materials, data and information delivered or made available by Seller to Buyer in connection with the transaction contemplated hereby are provided to

Initials JH 651ef6e Buyer Initials PW a99c98b Seller

Buyer as a convenience only and that any reliance on or use of such materials, data or information by Buyer shall be at the sole risk of Buyer, except as otherwise expressly stated herein. Without limiting the generality of the foregoing provisions, Buyer acknowledges and agrees that (a) any environmental or other report with respect to the Property which is delivered or made available by Seller to Buyer shall be for general informational purposes only, (b) Buyer shall not have any right to rely on such report delivered or made available by Seller to Buyer, but rather will rely on its own inspections and investigations of the Property and any reports commissioned by Buyer with respect thereto, (c) neither Seller nor the person or entity which prepared any such report delivered or made available by Seller to Buyer shall have any liability to Buyer for any inaccuracy in or omission from any such report, and (d) Buyer shall assume all liability and costs associated with federal, state and/or local environmental laws or regulations.

**19. Governing Law**. This Offer shall in all respects be governed by, and construed in accordance with, the laws of the State of Michigan.

**20. Entire Agreement**. This instrument constitutes the entire agreement between the Seller and the Buyer, and there are no other terms, conditions, promises, understandings, statements or representations, express or implied, oral or written, concerning the transaction contemplated hereunder. This Offer shall inure to the benefit of and bind both parties and their respective agents, representatives, successors and assigns.

**21. Effective Date**. The Effective Date of this Offer shall be the date signed as accepted by the City Council and other authorities.

Signed on behalf of Buyer this ______ day of June__, 2023.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed as of the date first written above.

WITNESSES

Sha Wanna Gajewski
ff9bf4
10:37a.m. 06-07-2023
Signature

ShaWanna Gajewski

Printed Name:

BUYER

John Hearn Jr. signing on behalf of Western Wayne Urban Community Development
1f10fe
2:19p.m. 06-07-2023
Signature

Pastor John D. Hearn Jr, signing for Western Wayne Urban Community Development
Printed Name

Its: __CEO

Initials JH 379fb93 Buyer
Initials PW 703475 Seller

WITNESSES

Verna Chapman 539e22f 1:21p.m. 06-09-2023

Signature

Verna Chapman, City Clerk

Verna Chapman, City Clerk

Printed Name:

SELLER

Patrick Wimberly, Mayor signing on behalf of the City Of Inkster 636bcbf 1:07p.m. 06-09-2023

Signature

Printed Name: Patrick Wimberly, City of Inkster

Its: Mayor

**ACKNOWLEDGEMENT OF ACCEPTANCE: Bottomline**

Buyer hereby signs below to acknowledge receipt of acceptance of the signed purchase agreement by the Seller.

BUYER

John Hearn Jr. signing on behalf of Western Wayne Urban Community Development 74c7b31 9:58a.m. 06-12-2023

Signature

Pastor John D. Hearn Jr, signing for Western Wayne Urban Community Development

Printed Name:

Its: CEO

Initials JH b353448 Buyer Initials PW ff6c9e5 Seller